**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| SOLYNDRA, LLC., et al., | : | |
| | : | |
| Debtors. | : | Case No. 11-12799 (MFW) |
| _____ | : | (Jointly Administered) |
| | | |
| SEAGATE TECHNOLOGY (US) | : | |
| HOLDINGS, INC., | : | |
| | : | |
| Plaintiff, | : | Adv. Proc. No. 15-50268 (MFW) |
| | : | |
| v. | : | |
| | : | |
| GLOBAL KATO HG, LLC, | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |
| | | |
| GLOBAL KATO HG, LLC, a | : | |
| California limited | : | |
| liability company, | : | |
| | : | |
| Plaintiff, | : | Adv. Proc. No. 15-50925 (MFW) |
| | : | |
| v. | : | |
| | : | |
| SEAGATE TECHNOLOGY (US) | : | |
| HOLDINGS, INC., a Delaware | : | |
| corporation; and DOES 1-10, | : | |
| inclusive, | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

<u>**MEMORANDUM OPINION**</u>[1]

Before the Court are two motions filed by Global Kato HF,

LLC ("Global Kato"): The first is a motion to dismiss, for lack

_____

[1] This Court is not required to state findings of fact or conclusions of law, pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.  Accordingly, the facts recited are those averred in the Complaints, which must be presumed as true for the purposes of the motion to dismiss and the motion to remand. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).

of subject matter jurisdiction or for failure to state a claim, the adversary proceeding commenced by Seagate Technology (US) Holdings, Inc. ("Seagate").  The second is a motion to remand an action initiated by Global Kato against Seagate in California state court that was subsequently removed to this Court.  Because the Court concludes it has no subject matter jurisdiction over either adversary proceeding, both motions will be granted.

I.   <u>BACKGROUND</u>

In September 2003, Global Kato, as landlord, and Maxtor Corporation ("Maxtor"), as tenant, entered into an industrial lease (the "Lease") for a manufacturing facility in Fremont, California (the "Premises").  (Adv. 1 at D.I. 1, ¶ 18.)[2]  The Lease was for a term of eight years, ending on September 29, 2011.  (<u>Id.</u>)  On December 1, 2006, Maxtor assigned the Lease to Seagate.  (<u>Id.</u>)  Shortly thereafter, on January 24, 2007, Seagate subleased the Premises to 360 Degree Solar Holdings, Inc. (the "Debtor") pursuant to a sublease agreement (the "Sublease").  At that time, the Debtor also entered into a lease with Global Kato for a term immediately following the expiration of the Seagate Lease (the "Direct Lease").  (<u>Id.</u>)

---

[2]  References to the record are: "D.I. #" for pleadings from the main case; "Adv. 1 at D.I. #" for pleadings filed in Adv. Proc. No. 15-50268; "Adv. 2 at D.I. #" for pleadings filed in Adv. Proc. No. 15-50925.

On September 6, 2011, the Debtor and its affiliate, Solyndra LLC, filed chapter 11 bankruptcy petitions.  The Debtor also filed a motion to reject both the Sublease and the Direct Lease. (Id. at ¶ 23.)  Global Kato and Seagate both objected to the motion.  (Id.)  In settlement of Global Kato's objection, the Debtor and Global Kato entered into a stipulation authorizing the rejection (the "Stipulation").  (Id. at ¶ 24.)

Under the Stipulation, Global Kato's rejection damages claim was allowed in the amount of approximately $17.5 million.  (D.I. 905, ¶ 11.)  The Stipulation further provided that Global Kato would retain and pay the Debtor's environmental contractor an amount up to $848,318 (the "Work Cap") to remediate environmental damages at the Premises.  (Id. at ¶ 9.)  In the Stipulation, Global Kato agreed to credit Seagate up to the Work Cap for any claims Global Kato may have against Seagate as it related to the Debtor's occupancy.  (Id. at ¶ 15.)

On October 22, 2012, the Court entered an order confirming the Debtor's Amended Joint Plan (the "Plan"), which became effective on November 7, 2012.  (D.I. 1224.)  As a component of the Plan, the Solyndra Settlement Trust (the "Trust") was established for the purpose of collecting, liquidating, and distributing certain of the Debtor's assets.  (D.I. 1124.)

On March 8, 2013, Global Kato served a demand letter on Seagate requesting that Seagate: (i) reimburse Global Kato for environmental closure costs in excess of the Work Cap, (ii)

3

remove certain equipment from the Premises left behind by the
Debtor, and (iii) pay damages for lost rent caused by the
environmental contamination.  (Adv. 1 at D.I. 1.)  In response to
the demand letter, Seagate hired its own firm to complete
remediation efforts at the Premises.  (<u>Id.</u> at ¶ 29.)  Seagate
alleges that the remediation of the Premises was completed by
October 2014.  (<u>Id.</u> at ¶ 30.)  Seagate further alleges that
because of Global Kato's gross negligence and commercial
unreasonableness, remediation of the Premises lasted far longer
than necessary and resulted in inflated costs.  (<u>Id.</u> at ¶ 31.)
Seagate contends that under its supervision, remediation of the
Premises was successfully completed at a cost to Seagate of at
least $1.1 million, far less than what Global Kato proposed.
(<u>Id.</u>)

On April 20, 2015, Seagate filed a complaint in this Court
(the "Seagate Complaint") against Global Kato and the Trust
alleging: (1) breach of contract, (2) equitable indemnity, (3)
unjust enrichment, and (4) declaratory relief.  (Adv. 1 at D.I.
1.)

On May 19, 2015, Global Kato filed an action against Seagate
for breach of the Lease in the California Superior Court for the
County of Alameda (the "California Action").  (Adv. 2 at D.I. 1,
¶ 1).  In the California Action, Global Kato has alleged the
following causes of action against Seagate: (1) breach of the
Lease, (2) express contractual indemnity, (3) breach of the

4

implied covenant of good faith, and (4) declaratory relief.
(Adv. 2 at D.I. 26.)  On July 9, 2015, Seagate removed the
California Action which was thereafter transferred to this Court.
(Adv. 2 at D.I. 22.)

On May 20, 2015, Global Kato filed a motion to dismiss the
claims against it in the Seagate Complaint, or, in the
alternative, to abstain.  (Adv. 1 at D.I. 5.)  In the removed
adversary proceeding,  Global Kato filed a motion to remand.
(Adv. 2 at D.I. 26.)  Notices of completion of briefing on both
motions were filed and those matters are now ripe for decision.
(Adv. 2 at D.I. 29; Adv. 1 at D.I. 31.)


II.  <u>JURISDICTION</u>

A bankruptcy court has the authority to determine whether it
has subject matter jurisdiction over an adversary proceeding.
<u>See, e.g.</u>, <u>MPC Liquidating Trust, LLC v. Granite Fin. Solutions</u>
<u>(In re MPC Computers, LLC)</u>, 465 B.R. 384, 386 (Bankr. D. Del.
2012) (citation omitted) (holding that a federal court has
authority to determine whether it has subject matter jurisdiction
over a dispute).


III.  <u>DISCUSSION</u>

A.  <u>Motion to Dismiss for Lack of Subject Matter
Jurisdiction</u>

1.  <u>Legal Standard</u>

5

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides that a federal court may dismiss a complaint for lack of subject matter jurisdiction.  A motion to dismiss under Rule 12(b)(1) challenges the power of the federal court to hear a claim or case.  See, e.g., Democracy Rising PA v. Celluci, 603 F. Supp. 2d 780, 788 (M.D. Pa. 2009).

Courts may consider subject matter jurisdiction at any time and must dismiss an action if subject matter jurisdiction is lacking.  Fed. R. Civ. P. 12(h)(3).  The issue can be raised in any manner, including on motion of one of the parties or by the court sua sponte.  See, e.g., Enterprise Bank v. Eltech, Inc. (In re Eltech, Inc.), 313 B.R. 659, 662 (Bankr. W.D. Pa. 2004).

In addition, a party may make a "factual" attack arguing that, although the pleadings facially satisfy jurisdictional prerequisites, one or more of the allegations is untrue, thereby rendering the controversy outside the court's jurisdiction.  See, e.g., Democracy Rising PA, 603 F. Supp. 2d at 788.  In such circumstances, a court is required to evaluate the merits of the disputed allegations because "the trial court's . . . very power to hear the case" is at issue.  Id.  In a factual attack, a court's analysis of the merits is not confined to the allegations in the complaint; it can consider evidence outside the pleadings to resolve the factual issues bearing on jurisdiction.  See, e.g., Davis v. Soc. Sec. Admin., No. Civ. A. 02-1595-SLR, 2003 WL 21219821, at *1 (D. Del. May 20, 2003).

6

In a Rule 12(b)(1) motion to dismiss, the party invoking the federal court's jurisdiction bears the burden of establishing that the court has jurisdiction.  See, e.g., Common Cause of Pa. v. Pa., 558 F.3d 249, 257 (3d Cir. 2009).  A motion to dismiss for want of subject matter jurisdiction will be granted only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  See, e.g., Calhoun v. United States, 475 F.Supp. 1, 2-3 (S.D. Cal. 1977).

### 2.   Subject Matter Jurisdiction

Federal bankruptcy jurisdiction extends to four types of matters: (1) cases under title 11, (2) proceedings arising under title 11, (3) proceedings arising in a case under title 11, and (4) proceedings related to a case under title 11.  28 U.S.C. §§ 157, 1334.  See also Stoe v. Flaherty, 436 F.3d 209, 216 (3d Cir. 2006); In re Combustion Eng'g Inc., 391 F.3d 190, 225 (3d Cir. 2004).

 A case under title 11 is merely the bankruptcy petition itself.  In re Marcus Hook Dev. Park Inc., 943 F.2d 261, 264 (3d Cir. 1991).

Proceedings arising under title 11 refer to the steps within the bankruptcy case and any action within the case that may raise a disputed or litigated matter.  See, e.g., Michigan Emp'r Sec. Comm'n v. Wolverine Radio Co., Inc. (In re Wolverine Radio Co., Inc.), 930 F.2d 1132, 1141 n.14 (6th Cir. 1991).  "Arising under"

7

proceedings encompass actions based on any express provision of the Bankruptcy Code; for example, a sale of assets under section 363.

Proceedings arising in a case under title 11 refer to proceedings that are not based on any right expressly created by title 11, but nevertheless would have no existence outside the bankruptcy case. Stoe, 436 F.3d at 216. See, e.g., Nelson v. Welch (In re Repository Techs., Inc.), 601 F.3d 710, 719 (7th Cir. 2010) (offering determinations of the validity, extent, or priority of liens as examples of "arising in" jurisdiction).

Proceedings "related to" a case under title 11 constitute "the broader universe of all proceedings that are not core proceedings but are nevertheless 'related to' a bankruptcy case." Halper v. Halper, 164 F.3d 830, 837 (3d Cir. 1999).

Seagate asserts that the Court has "arising under," "arising in," and "related to" jurisdiction for each count in the Seagate Complaint.  Global Kato argues that subject matter jurisdiction is lacking for all counts.

a.    "Arising In" and "Arising Under" Jurisdiction

Seagate argues that the Court has "arising in" jurisdiction because the Stipulation and the Order approving the Stipulation granted relief under several provisions of the Bankruptcy Code. Seagate next argues the Court has "arising under" jurisdiction because its claims would have no practical existence but for the bankruptcy.  (Adv. 1 at D.I. 25, ¶ 30.)  Global Kato argues that

8

Seagate's action involves a pre-petition contract between non-debtor parties and therefore the Complaint cannot "arise in" or "arise under" the Bankruptcy Code.

The Court agrees with Global Kato.  Seagate's Complaint, though mentioning the Stipulation and Order approving it, is not founded on that Order and Stipulation but instead is grounded on its rights under the Seagate Lease.  A matter "arises under" the Bankruptcy Code if its existence depends on a substantive provision of bankruptcy law, that is, if it involves a cause of action created or determined by a statutory provision of the Bankruptcy Code.  Battle Ground Plaza, LLC v. Ray (In re Ray), 624 F.3d 1124, 1130 (9th Cir. 2010).  Each of Seagate's claims for relief arise not from any substantive provision of title 11, but rather, from state law (i.e., for breach of contract).  Therefore, the Court concludes it does not have "arising under" jurisdiction over those claims.

The Court is equally unpersuaded that it has "arising in" jurisdiction.  "Arising in" jurisdiction exists only if the action would "have no existence outside of the bankruptcy case." Geruschat v. Ernst Young LLP (In re Seven Fields Dev. Corp.), 505 F.3d 237, 260 (3d Cir. 2007) (claims for relief "arise in" a bankruptcy case if, by their very "nature, not particular factual circumstances, [they] could only arise in the context of a bankruptcy case.") (citing Stoe, 436 F.3d at 218).  Even if the claims brought by Seagate factually flowed from rights granted

9

under the Stipulation, those claims could be brought in a non-bankruptcy forum.  See e.g., In re Kmart Corp., 307 B.R. 586, 596 (Bankr. E.D. Mich. 2004) ("[S]tate courts are qualified to interpret the language of bankruptcy plans and orders and routinely engage in such interpretation.").  See also, Icco v. Sunbrite Cleaners, Inc. (In re Sunbrite Cleaners, Inc.), 284 B.R. 336, 342 (N.D.N.Y. 2002) ("Because contract interpretation is an issue of state law . . . the state courts are perfectly well-suited to interpret the First Amended Plan.").  Accordingly, the Court concludes that Seagate's arguments for "arising in" jurisdiction also fail.

b.    "Related to" Jurisdiction

Finally, Seagate contends that the Court has "related to" jurisdiction over its claims.  The test for "related to" jurisdiction is whether "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy."  In re Exide Techs., 544 F.3d 196, 205-06 (3d Cir. 2008) (citing Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984)).

"Related to" jurisdiction gives the bankruptcy court the power to hear proceedings that do not fall under title 11 and that could exist independently of the bankruptcy case, but only when there is some close nexus between the proceeding and the title 11 case.  See, e.g., Pacor, 743 F.2d at 994 ("An action is related to bankruptcy if the outcome could alter the debtor's

rights, liabilities, options, or freedom of action . . . and
which in any way impacts upon the handling and administration of
the bankruptcy estate.").

"Related to" jurisdiction "does not extend indefinitely,
particularly after the confirmation of a plan and the closing of
a case." Binder v. Price Waterhouse & Co., LLP (In re Resorts
Int'l, Inc.), 372 F.3d 154, 164-65 (3d Cir. 2004) (citation
omitted). "After confirmation of a chapter 11 plan, . . . the
scope of the bankruptcy court's 'related to' jurisdiction
diminishes." AstroPower Liquidating Trust v. Xantrex Tech., Inc.
(In re AstroPower Liquidating Trust), 335 B.R. 309, 323 (Bankr.
D. Del. 2005) (citing Resorts, 372 F.3d at 164). Because post-
confirmation there is no longer a bankruptcy estate that can be
affected, the bankruptcy court will only exercise jurisdiction
where a claim has "a close nexus to the bankruptcy plan" and the
matter at issue "affects the interpretation, implementation,
consummation, execution, or administration of a confirmed plan or
incorporated litigation trust agreement." Resorts, 372 F.3d at
168-69. See also EXDS, Inc. v. CB Richard Ellis, Inc. (In re
EXDS, Inc.), 352 B.R. 731, 735 (Bankr. D. Del. 2006); AstroPower,
335 B.R. at 323.

In this case, Seagate argues that there is a sufficiently
close nexus between the Seagate Complaint and the bankruptcy case
because: (1) the breach of contract claim hinges on
interpretation of the Stipulation; (2) the Plan specifically

11

identified the kind of dispute at issue in the breach of contract claim and reserved jurisdiction over it; and (3) resolution of the breach of contract claim is necessary for the Trust to execute and administer its duties under the Plan.  In addition to its breach of contract claim, Seagate's Complaint asserts claims for unjust enrichment, equitable indemnification, and declaratory relief.  For each of these claims, Seagate argues that "related to" jurisdiction exists because determination of each claim is "necessary for the Trust to execute and administer its duties under the Plan" in light of the impact each claim may have on resolving Seagate's proofs of claim.  (Adv. 1 at D.I. 25, ¶ 30.)

Each claim in the Seagate Complaint essentially relies on the same grounds for the Court's jurisdiction: adjudication of the claims will affect indemnification claims Seagate allegedly has against the Trust.

         i.   <u>Reservation of Jurisdiction in the Plan</u>

Seagate argues that the Debtor's confirmed Plan retains jurisdiction to resolve the Seagate Complaint.  The confirmed Plan states that the Court shall retain jurisdiction to "allow, disallow, determine, liquidate, classify, or estimate any Claim, . . . resolve any matters related to the rejection of any executory contract or unexpired lease" and "consider and act on the compromise and settlement of any Claim against . . . the [Trust]."  (D.I. 1059 at 100-01.)  Seagate asserts that these Plan provisions are sufficient to provide jurisdiction over the

Seagate Complaint.

Global Kato disagrees and argues that a Plan must specifically describe a cause of action in order to retain "related to" jurisdiction. BWI Liquidating Corp. v. City of Rialto (In re BWI Liquidating Corp.), 437 B.R. 160, 166 (Bankr. D. Del. 2010) ("[A] Plan must specifically describe a cause of action in order to retain 'related to' jurisdiction."). Seagate argues that the BWI holding is inapplicable because in that case the liquidating trustee was the plaintiff. Though Seagate admits the Plan does not specifically describe the causes of action in the Seagate Complaint, it argues that there can be no expectation that every unsecured claim against the Debtor would be specifically identified in the Plan.

The Court disagrees with Seagate and concludes that the Plan provisions that purport to preserve the bankruptcy court's jurisdiction over claim resolution are not alone sufficient to establish post-confirmation jurisdiction over Seagate's Complaint. Instead the Court must determine whether the Seagate Complaint "affects the interpretation, implementation, consummation, execution, or administration of [the] confirmed plan . . . ." Resorts, 372 F.3d at 168-69.

A "close nexus" may be found where the plan specifically enumerates the cause of action. See, e.g., AstroPower, 335 B.R. at 325 (holding that the plan must "specifically describe[] an action over which the Court had 'related to' jurisdiction pre-

13

confirmation and expressly provide[] for the retention of such jurisdiction to liquidate that claim for the benefit of the estate's creditors . . . ."). Specific language identifying such causes of action helps ensure that "bankruptcy court jurisdiction would not raise the specter of unending jurisdiction" post-confirmation. Id.

Contra to Seagate's argument, the Court concludes that the Plan must specifically describe a cause of action in order to retain "related to" jurisdiction, irrespective of who the plaintiff may be. BWI, 437 B.R. at 166. Compare AstroPower, 335 B.R. at 324 (finding sufficient specificity where the Plan retained jurisdiction over claims arising from the Debtor's sale of stock in Xantrax Technology, Inc.).

Therefore, the Court concludes that where, as here, the Plan only broadly provides for retention of jurisdiction over claims resolution, it provides no evidence of a sufficiently close nexus between the Seagate Complaint and the bankruptcy case to support post-confirmation "related to" jurisdiction. Resorts, 372 F.3d at 167.

ii.   Execution and Administration of Trust

Seagate argues that resolution of the Seagate Complaint is necessary for the Trust to execute and administer its duties because the Trust, as successor to the Debtor, owes indemnity obligations to Seagate arising from the Sublease to the extent Seagate is found to be liable to Global Kato. As such, Seagate

14

argues that "related to" jurisdiction exists over its breach of contract claim against Global Kato because resolution of that claim has a direct bearing on significant liabilities owed by the Trust to Seagate.

Global Kato responds that "related to" jurisdiction is not absolute even when a debtor has contractual indemnity obligations.  See W.R. Grace & Co. v. Chakarian (In re W.R. Grace & Co.), 591 F.3d 164, 174 n.9 (3d Cir. 2009) (stating that though contractual indemnity claims could give rise to "related to" jurisdiction over claims between third-parties, it is not absolute and depends upon the facts of each case).

While additional liability of the Trust may reduce recovery for other creditors, that is not enough to confer jurisdiction over Seagate's claims.  The Court must evaluate the potential to increase (or decrease) recovery for creditors with other contributing factors, "including whether the suit is post-confirmation and its relatedness to the Plan." BWI, 437 B.R. at 166 (citing AstroPower, 335 B.R. at 324).  As noted above, the Seagate Complaint was initiated over two years after the Debtor's Plan was confirmed and is unrelated to any specific provision of the Plan.  These two factors are the same factors the Third Circuit noted in Resorts when it concluded that the mere potential to increase or decrease the assets of the trust was insufficient to establish a close nexus.  Resorts, 373 F.3d at 70 ("[I]f the mere possibility of a gain or loss of trust assets

15

sufficed to confer bankruptcy court jurisdiction, any lawsuit

involving a continuing trust would fall under the 'related to'

grant.").

Seagate argues that the W.R. Grace decision supports its

contention that "related to" jurisdiction exists where there is a

"clear contractual right to indemnify." W.R. Grace, 591 F.3d at

172-73. Seagate's reliance on W.R. Grace is misplaced. As the

Third Circuit explicitly noted in W.R. Grace,

> [W]e do not mean to imply that contractual indemnity
> rights are in themselves sufficient to bring a dispute
> over that indemnity within the ambit of related-to
> jurisdiction. What will or will not be sufficiently
> related to a bankruptcy to warrant the exercise of
> subject matter jurisdiction is a matter that must be
> developed on a fact-specific, case-by-case basis.

591 F.3d at 174 n.9.

Notwithstanding Seagate's contractual right to

indemnification, the Court concludes that the facts alleged in

the Seagate Complaint do not warrant "related to" jurisdiction.

At its core, the Seagate Complaint concerns the Lease between

Seagate and Global Kato that is governed by state law. It is

only after adjudication of the claims that Seagate has against

Global Kato that it may be determined that Seagate has any

indemnity claims against the estate. That is insufficient to

warrant jurisdiction in this Court. See, e.g., W.R. Grace, 591

F.3d at 172-73 (holding that a bankruptcy court does not have

"related to" jurisdiction over a claim prosecuted by a third

party against a non-debtor defendant based solely upon the fact

16

that the defendant may pursue a separate cause of action against the estate for indemnification).  See also In re Federal-Mogul Global, Inc., 300 F.3d 368, 382 (3d Cir. 2002) (holding that there is no "related to" jurisdiction over a third-party claim if the initiation of another lawsuit would be required before the third-party claim could have any impact on the bankruptcy proceedings).

### iii. Interpretation of the Stipulation

Seagate contends that the Court has "related to" jurisdiction because its causes of action require interpretation of the Stipulation regarding Global Kato's remediation obligations and its agreement to give a credit to Seagate.

Even if adjudication of the Seagate Complaint requires such interpretation, however, the Court concludes that this factor alone does not support "related to" jurisdiction.  To the extent the Stipulation affords Seagate certain rights, a state court is fully able to interpret the Stipulation and give effect to those rights.  See Kmart, 307 B.R. at 596; Sunbrite Cleaners, 284 B.R. at 342.  Simply stated, any effect the adjudication of the Seagate Complaint may have on the Debtor's bankruptcy proceeding is far too attenuated to justify "related to" jurisdiction.

For the foregoing reasons, the Court concludes that it has no subject matter jurisdiction over the claims asserted in the Seagate Complaint against Global Kato because they are not sufficiently "related to" the bankruptcy case.

17

B.   Motion to Remand

Global Kato argues in the motion to remand that this Court:
(1) must remand because subject matter jurisdiction is lacking
over the California Action, (2) should remand on equitable
grounds in the event the Court finds subject matter jurisdiction
exists, (3) must abstain, or (4) should abstain on discretionary
grounds.

Seagate responds that: (1) the Court has subject matter
jurisdiction over the California Action; (2) equitable remand is
inappropriate because of the relatedness of the California Action
to the Debtor's chapter 11 case; (3) the grounds for mandatory
abstention are absent; and (4) discretionary abstention is
unwarranted.

Section 1447 of title 28 provides that, "[i]f at any time
before final judgment it appears that the district court lacks
subject matter jurisdiction, the case shall be remanded."  28
U.S.C. § 1443(c).

Unlike the Seagate Complaint which Seagate asserts required
interpretation of the Plan, Trust and Stipulation, the California
Action is solely a dispute between non-debtor parties concerning
a pre-petition contract.  Nonetheless, Seagate argues that the
Court has "related to" jurisdiction over the California Action
because:  (1) the Stipulation reserved exclusive jurisdiction to
the Court to resolve any dispute related to it; and (2) the
California Action cannot be adjudicated without interpretation of

18

the Stipulation and Order approving it.

Even if the Stipulation reserved exclusive jurisdiction, the Court concludes that is irrelevant. Resorts, 372 F.3d at 161 ("Where a court lacks subject matter jurisdiction over a dispute, the parties cannot create it by agreement even in a plan of reorganization."). Consequently, Seagate's reliance on the retention of jurisdiction provision in the Stipulation only carries weight to the extent subject matter jurisdiction is otherwise present over the California Action.

As stated above, a bankruptcy court's jurisdiction is substantially narrowed post-confirmation. Resorts. There must be a close nexus between the California Action and the administration, consummation or execution of the Plan in order for "related to" jurisdiction to exist. Id. at 167.

The California Action was filed more than two and one half years after confirmation of the Debtor's Plan. The California Action did not arise "in connection" with the Plan and does not require construction or interpretation of the Plan for its resolution. See Resorts, 372 F.3d at 167; Shandler v. DLJ Merch. Banking, Inc. (In re Insilco Techs., Inc.), 330 B.R. 512, 525-26 (Bankr. D. Del. 2005) (finding no jurisdiction over pre-petition state law claims brought by liquidating trustee post-confirmation). The Plan does not expressly describe the California Action or retain jurisdiction over the dispute between Global Kato and Seagate. See BWI, 437 B.R. at 164; AstroPower,

19

335 B.R. at 325.

Seagate argues nonetheless that because adjudication of the California Action implicates Seagate's rights under the Stipulation, the close nexus requirement is satisfied.  The Court disagrees.  The Court concludes that where, as here, the Plan only broadly provided for retention of jurisdiction over causes of action, there is not a sufficiently close nexus with the bankruptcy proceeding to support post-confirmation jurisdiction over the California Action which is a breach of contract action between two non-debtors.  <u>Resorts</u>, 372 F.3d at 167.  As a result, the Court is compelled to remand the California Action to the California state court.  28 U.S.C. § 1443(c).

IV.  <u>CONCLUSION</u>

For the reasons set forth above, the Court will grant Global Kato's Motion to Dismiss Seagate's Complaint for lack of subject matter jurisdiction for the claims asserted against Global Kato and will grant Global Kato's Motion to Remand the California Action to the California Superior Court for Alameda County.

Appropriate orders to follow.

Dated: October 16, 2015                    BY THE COURT:

_Mary F. Walrath_
Mary F. Walrath
United States Bankruptcy Judge

20